442 So.2d 808 (1983)
Johnnie BOYCE
v.
NEW ORLEANS PUBLIC SERVICE, INC.
No. CA 0874.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1983.
*809 Floyd F. Greene, New Orleans, for defendant-appellant.
Steve V. Barbre and Matthew B. Collins, Jr., New Orleans, for plaintiff-appellee.
Before SCHOTT, BARRY and LOBRANO, JJ.
SCHOTT, Judge.
This is a suit for personal injuries sustained by plaintiff when he was a passenger on a bus owned by defendant, New Orleans Public Service, Inc. (NOPSI). Also made defendant was William H. Gregg, the operator of a truck involved in the accident which allegedly caused plaintiff's injuries. The case was tried to a jury which returned a verdict in plaintiff's favor for $38,000 against NOPSI and exonerated Gregg. NOPSI has appealed limiting arguments in this court to the issue of quantum of damages.
At the time of the accident on October 28, 1980, plaintiff was rising from his seat on the bus and was jolted or thrown back against the seat. He immediately reported to the driver that his back was injured. Later that evening he felt a severe pain in the low back when he bent down and he went to Charity Hospital where he was examined and was given pain medication. On the following day he went to Dr. Chas. H.D. Bauers, a general practitioner and surgeon, for treatment.
Bauers testified: Plaintiff was complaining of excruciating pain in his back and had muscle spasms and tenderness over the lumbar spine. Bauers diagnosed a lumbar strain, prescribed medication, and scheduled a return visit for November 3. At this time plaintiff's symptoms had improved but spasm was still present and Dr. Bauers added diathermy to the regimen. Plaintiff began these diathermy treatments on November 6 and continued with them twice a week until November 24. By December 1 plaintiff was asymptomatic and on December 9 he was discharged.
On May 13, 1981, plaintiff went to Dr. T.S. Whitecloud, III, an orthopedist, who testified: Plaintiff complained of intermittent low back pain especially after heavy lifting or sudden motion of the lower spine. Examination revealed no objective symptoms. Dr. Whitecloud concluded that plaintiff may have sustained a strain and may have some residual discomfort but he should have completely recovered from any injury he sustained in the bus accident. He recommended that plaintiff continue with his exercise program. Plaintiff returned on June 1 and on July 10 when the complaints and findings were about the same as before. On August 12 he returned stating that he had started having discomfort in the evenings. Dr. Whitecloud still felt that plaintiff had no serious problem but because of plaintiff's persistence he scheduled a computer tomograph study, which is a special X-ray evaluation of the lower back. This was performed on December 12 and was negative. On March 23, 1982, plaintiff returned complaining of an onset of some rather severe pain in the lower back after some sudden motion. Examination disclosed some mild spasm. Dr. Whitecloud saw plaintiff for the last time on April 27, 1982, when he was still complaining of some discomfort but had no spasm. Although the doctor found no objective symptoms at this time he felt that plaintiff "probably does have some back discomfort." Dr. Whitecloud did not think plaintiff "has anything more than a lumbar spine that perhaps is bothering him a little bit more frequently than someone who has not been injured" and he thought that plaintiff might have intermittent back discomfort for some period of time in the future.
*810 Dr. Masako Wakabayashi, a radiologist, performed thermograms on plaintiff on January 25 and May 17, 1982. She testified that the thermogram is a test in which temperature is measured at points in the body to detect spasm or irritability. Based on the January test she concluded that spasm and irritability were present in plaintiff's lower lumbar region and after the May test she concluded that he had nerve root irritation at L4 and L5.
Plaintiff was twenty-four years of age when the case was tried in May, 1982. He had worked at various jobs since he was seventeen and had worked at an oyster restaurant for a year before the accident. This involved handling heavy sacks of oysters and blocks of ice. He had participated extensively in sports before the accident. He testified that he could no longer pick up anything heavy and can no longer participate in sports to any appreciable extent. He stated that he had made a recovery at the time he was discharged by Dr. Bauers but began having trouble again leading him to consult Dr. Whitecloud. He stated that whenever he tries to do something his back gives him trouble frustrating him and making him "grouchy;" and as far as work is concerned "if it had not been for this accident, I could have been looking forward where I could get a job where it involved doing something to make more money. But now, I can only limit it to do light work." He went on to say that his job opportunities are limited because he must disclose on applications that he was injured and "that is a mark against me." Finally, he testified that he never had any back problems before this accident.
Plaintiff's testimony was corroborated by that of his supervisor and his wife that his activities have been curtailed since the accident.
NOPSI contends that the jury abused its discretion in awarding $38,000 (which includes about $1500 of stipulated special damages) for a soft tissue injury which was resolved on December 1, 1980. NOPSI argues that plaintiff's credibility was questionable because of a few minor discrepancies in his testimony.
The jury was apparently satisfied that plaintiff was truthful and accepted his testimony that he did suffer a relapse which caused him to see Dr. Whitecloud, was still disabled to some extent nineteen months after the accident, and would continue to be so disabled for some time in the future. It was apparently convinced that this young man did suffer a substantial set back in his personal life and in the area of job opportunities because of his injuries. The record does not provide us with any basis to substitute our own credibility evaluation for the jury's.
There is no fixed scale of awards for soft tissue injuries. In order for this court to conclude that this particular award is excessive it would be necessary for us to make an articulated analysis of the facts disclosing an abuse of discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). This we are unable to do, especially when we must accept the jury's credibility calls and consider the facts in the light most favorable to the appellee.
Accordingly, the judgment is affirmed.
AFFIRMED.